**Norman Franklin BROWN, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–75–698.**

Court of Criminal Appeals of Oklahoma.

May 13, 1976.

Houston Bus Hill and Valdhe F. Pitman, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Mary Ann Karns, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

The appellant, Norman Franklin Brown, hereinafter referred to as defendant, was a juvenile within the purview of the Juvenile Act when he was charged in the District Court of Kiowa County with the offense of First Degree Rape. After waiver and certification by the Juvenile Division of the District Court, he was tried before a jury and convicted of Second Degree Rape in Case No. CRF–74–39. In conformance with the jury verdict the defendant was sentenced to serve a term of eleven (11) years in the custody and control of the Department of Corrections of the State of Oklahoma. From said judgment and sentence the defendant has perfected his timely appeal.

The record indicates that the defendant was arrested on a charge of First Degree Rape. When it became apparent that he was 16 years of age at the time of the occurrence of the alleged rape, a Kiowa County Undersheriff filed a verified petition in the Juvenile Division of the District Court alleging as follows:

"That the facts that bring the said child within the purview of said statutes, are as follows: That he is a male child under the age of 18 years who has violated

the laws of the State of Oklahoma in that on or about June 29th, 1974 in Kiowa County, Oklahoma, he did while acting in concert with others, did wilfully, wrongfully, intentionally and feloniously with the use of force and violence and by means of threats of immediate and great bodily harm to one Myrtle Jean Richardson, a female person not the wife of the said defendant, overcome all her resistance, and did then and there rape, ravish, carnally know and have sexual intercourse with said female against her will and consent.

That the name, age and residence of said child is Norman Franklin Brown age 17 and date of birth 7–22–1957, Anadarko, Oklahoma.

That the name and residence of his parents are: Mother—Norma Wahnee, Box 13, White River, Arizona, Father—Junior Frank Brown, Pawnee, Oklahoma. That the names and residence of grandparents who he is residing with at the present are: Mr. and Mrs. Wilson Aboah, 3 miles North of Anadarko, Oklahoma. That the petitioner prays for the following relief: That a hearing be held on the question of certification of the above named subject as adult, that an investigation be made by the Department of Public Welfare and that said Norman Franklin Brown be committed to Western State Hospital to determine if he knows right from wrong and is accountable for his actions. Then upon return from said hospital that the hearing be held to determine if he should be certified by the court to stand trial as an adult or if determined he does not know right from wrong then to proceed against said child as delinquent."

Upon the filing of said verified petition the Juvenile Court appointed counsel for the defendant and ordered that defendant be committed to Western State Hospital to determine if he knew right from wrong and was accountable for his actions. The Department of Public Welfare was also ordered to "make an investigation as to the home of said child, and any and all other matters which would be helpful to the Court in determining whether further action should be taken". The defendant was then taken to Western State Hospital for observation. Six days later the defendant was returned to Kiowa County and the hospital submitted a report stating that he was psychosis free, mentally competent and was able to distinguish between right and wrong. The Department of Public Welfare submitted the requested report and on the 21st day of August, 1974, a certification hearing was held without written notice to the defendant's parents, grandparents or guardian.

The transcript of the certification hearing held on the 21st day of August, 1974, reveals that Anthony Pitt, Kiowa County Undersheriff testified as follows, to-wit:

"A State your name and your profession, please, sir.

"A Anthony Pitt, Undersheriff, Kiowa County.

"Q How long have you been so employed, Mr. Pitt?

"A Approximately three years.

"Q In the course of your employment have you had occasion to meet one Norman Franklin Brown?

"A Yes, sir, I have.

"Q What were the circumstances that led to this, Mr. Pitt?

"A The circumstances involved was an alleged rape that occurred in Kiowa County on June 29th, this year.

"Q Have you had any conversations or visits with Norman Franklin Brown since this time?

"A Yes, sir, I have.

"Q Would you tell the court just what you have observed and the different times if there are more than one, what you have observed concerning this individual?

"A Yes, sir. The day I arrested him at Anadarko, on the way back he

talked about the fact they needed rain, it was pretty dry in the area; the farmers needed rain for their crops. He seemed to be intelligent and bright talking and he was transported here to the jail to Hobart and then he was transported by me to Fort Supply, the Western State Hospital, and he talked about the housing, how the houses looked between here and there, and how they needed rain up through there too. He seemed to be bright and intelligent to me in his talking.

"Q Mr. Pitt, from your observation and conversations with Norman Franklin Brown were you able to form an opinion as to whether or not he knows right from wrong?

"A Yes, sir, I was.

"Q What is that opinion, Mr. Pitt?

"A I believe he does know right from wrong.

"Q Mr. Pitt, were you able to form an opinion as to whether or not Norman Franklin Brown is accountable for his actions?

"A Yes, sir. I believe he is.

"Q What is that opinion?

"A I believe he is accountable for his actions.

"Q Is the party that you refer to as Norman Franklin Brown, is he present here today?

"A Yes, sir, he is.

"Q Would you point him out, please?

"A Seated there in the striped shirt next to Mr. Talley.

"Q Mr. Pitt, in the course of your conversations with Mr. Brown, your investigation, did you determine what Mr. Brown's age was and his date of birth?

"A Yes, sir. His date of birth was 7/22/1957.

"Q What would that make his age at this time?

"A Seventeen at this time."

Caddo County Juvenile Officer Clyde Blakeley then testified as follows, to-wit:

"Q Would you explain to the court what, if any, knowledge you have concerning Mr. Brown and the circumstances under which you visited with him?

"A Yes, sir. On April 23rd the police department called me and advised me it had a juvenile down there drunk, so I went down to the police department and Norman was there, passed out. Then the next day, they brought him up to me and I talked to him and returned him to his parents, or his grandparents. April 26th, Robert Moore, he works for the welfare department, we went to this boy's home to talk to his parents and him about his drinking and about his school. Then on May 4th the highway patrol arrested this boy and I got a call the next day that they had a juvenile in jail down there and I went down and talked to him, to Norman, and then, I don't have the date, but one date later on I met Norman on the highway out north of Riverside and had a talk with him.

"Q This has been since April?

"A No, I think that would be back before this time, earlier, I'd say probably the last of March, something like that?

"Q '74?

"A '73. This is all in '73.

"Q You haven't had any dealings with him in '74?

"A No."

Blakeley further indicated that it was his opinion that the defendant knew the difference between right and wrong and was accountable for his actions.

Juvenile Officer Robert Moore then testified that in the course of his duties he had occasion to meet the defendant and from those visits it was his opinion that the defendant knew the difference between

right from wrong and was accountable for his actions. He further stated on cross-examination that the defendant had school and drinking problems but he "seemed like a normal child".

Defendant's mother then testified that she and the defendant's step-father lived in Arizona and that in 1973 they had sent him to live with his grandparents in Anadarko because of a growing drug problem in Arizona and the fact that he was not doing well in school. She further stated that she felt that the boy knew the difference between right and wrong.

After considering the evidence and the reports the Juvenile Court entered an order certifying the defendant as an adult, the pertinent parts of said order being as follows, to-wit:

"Thereupon the court, after hearing the sworn testimony of witnesses, and after examining the written report from the Western State Hospital hereinbefore referred to, and upon and after a full investigation and Preliminary Hearing as to the questions involved in this hearing, and after hearing arguments of counsel, and after due and careful consideration of the said report from the Western State Hospital and the testimony and evidence introduced, the court finds that the said Norman Franklin Brown, the child involved herein, does know right from wrong and is accountable for his acts, and should therefore be certified as a person who is capable of knowing and does know right from wrong and is accountable for his acts, and that if he is prosecuted for the crime hereinbefore referred to, he should be properly prosecuted by proper criminal proceedings as an adult and that the Juvenile Proceedings should not be continued.

IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED BY THE COURT that the said Norman Franklin Brown is capable of knowing and does know right from wrong, and is accountable for his acts, and that he be and is hereby certified as a person who is capable of knowing and does know right from wrong and is accountable for his acts, and that if he is prosecuted for the crime hereinbefore referred to, that he be properly prosecuted by proper criminal proceedings as an adult, and that the Juvenile proceedings be not continued.

IT IS FURTHER ORDERED that the files and papers in this case be transferred from the Juvenile docket in this court to and filed and entered on the Criminal Felony docket in the District Court, in which case the District Attorney may file such criminal charges and take such action and proceedings as in his discretion and judgment he may deem proper and appropriate.

IT IS FURTHER ORDERED BY THE COURT that the said Norman Franklin Brown be and he is hereby remanded to the custody of the Sheriff of Kiowa County, Oklahoma, to be by said Sheriff confined in the county jail of Kiowa County, Oklahoma, WITHOUT BAIL, until the further order of the court."

The defendant in his brief urges that the juvenile proceedings held did not comply with the provisions of the Oklahoma Statutes concerning delinquent children and certification of children to stand trial as adults. With this contention we wholeheartedly agree.

In our recent decision of *Crandell v. State,* Okl.Cr., 539 P.2d 398, we held that there are no alternative methods of initiating juvenile proceedings against a child charged with a violation of a State statute. Title 10, Section 1112, as amended, requires that the court upon ascertaining that the defendant before it is a child, must immediately transfer the case to the Juvenile Division of the court. Upon the filing of a verified petition, notice must be given pursuant to Sections 1103, 1104 and 1105 of Title 10. This Court went on to hold as follows, to-wit:

"Adequate and timely notice is a fundamental requirement of the constitutional

guarantee of due process of law. The information filed in this case is sufficient to provide such notice to the accused. In a juvenile proceeding, however, due process requires that 'the child *and his parents or guardian be notified, in writing,* of the specific charge or factual allegations to be considered at the hearing, and that such written notice be given at the earliest practicable time, and in any event sufficiently in advance of the hearing to permit preparation.' *Re Gault,* 387 U.S. 1, 33, 87, S.Ct. 1428, 1446, 18 L.Ed.2d 527, 549. (Emphasis added)"

■ The notice provisions are mandatory. Any certification order arising out of a hearing held without such mandatory notice is void.

■ In the instant case the record as a whole reveals that no written notice was given as required by law and that, in fact, the portion of the certification hearing was held immediately upon filing of the verified petition. Although the juvenile court obtained jurisdiction over the defendant in the instant case by virtue of the filing of the verified petition, the order entered by said court certifying defendant to stand trial as an adult was void and any action subsequently taken by the District Court is of no effect whatsoever.

■ In *J.T.P. v. State,* Okl.Cr., 544 P. 2d 1270, we further held that § 1112(b) provides certain guidelines which the juvenile court must consider in making its determination about the appropriateness of juvenile or adult treatment for a child. We further held that, although it is not necessary that the court's consideration be arithmetically proportioned among the eight factors outlined in § 1112(b), said section does require two ultimate findings as prerequisite to a valid certification order. The first is a finding that there is prosecutive merit to the complaint. The second required finding is that the child is not a fit subject for rehabilitation by the facilities and programs available to the juvenile court. In the instant case it is apparent that the juvenile court considered neither of the above ultimate factors since no evidence was presented concerning the prosecutive merit of the claim or the child's amenability to the rehabilitative functions of the juvenile process. There is no presumption built into the Juvenile Act that a child who has committed a very serious offense is not receptive to rehabilitative treatment and the evidence presented at the certification hearing was insufficient to support the certification order. Since no finding of either ultimate factor was made by the juvenile court in said order, the order is defective on its face.

Considering all the above, this Court has no alternative than to reverse the judgment and sentence appealed from and to remand with instructions to dismiss the criminal proceedings. Since the Juvenile Court still retains jurisdiction over the defendant a new certification hearing after due written notice may be held. If the Juvenile Court, taking into consideration the guidelines and ultimate factors discussed above, determines that the evidence presented justifies certification then, upon certification, a new trial must be granted. If the facts as presented at said hearing do not justify certification, then the defendant must be dealt with within the juvenile process or the juvenile proceedings dismissed. The juvenile court is referred to the provisions of 10 O.S. § 1102 which reads in pertinent part as follows, to-wit:

"When jurisdiction shall have been obtained over any child, it may be retained until the child becomes twenty-one (21) years of age."

The juvenile court is also referred to the provisions of the Juvenile Act concerning a child's right to bail.

For all of the above and foregoing reasons the judgment and sentence appealed from is REVERSED AND THE CAUSE REMANDED to the District Court of Kiowa County for further proceedings consistent with this opinion.

BRETT, P. J., and BUSSEY, J., concur.